SMITH v. THOMPSON et al.    (No. 7871.)

(Court of Civil Appeals of Texas. Dallas. Jan. 26, 1918. Rehearing Denied Feb. 23, 1918.)

1. APPEAL AND ERROR ☞1002—SCOPE—FINDINGS OF FACT.

The court on appeal will not disturb a verdict rendered upon conflicting evidence sufficient to authorize the judgment.

2. DEEDS ☞206—EVIDENCE—SUFFICIENCY.

In suit to cancel a quitclaim deed, evidence *held* to show that plaintiff intentionally and with full knowledge of the nature, character, and consequences of his act, and without any mistake of facts, executed and delivered the deed intending to divest himself thereby of his interest in the land.

3. DEEDS ☞58(2), 65—DELIVERY—EFFECT.

Delivery of a deed expressing consideration of love and affection by a grantor who understood the nature and consequences of his act to an agent, who delivered it to the grantee, who had it recorded, was a sufficient delivery and acceptance to pass the title.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.·

Suit by Ben L. Smith against Maude Eva Thompson and another. Judgment for defendants, and plaintiff appeals. Affirmed.

M. M. Parks and W. L. Mathis, both of Dallas, for appellant. Carden, Starling, ·Carden, Hemphill & Wallace, of Dallas, for appellees.

TALBOT, J. This· suit was instituted by the appellant, Ben L. Smith, against the appellees, Maude Eva Thompson and her husband, T. M. Thompson, on May 13, 1915, in which appellant sought to have the premises described in his petition, being lot No. 19 in block No. 267, according to the official map of the city of Dallas, partitioned. It is alleged, in substance, that said land and premises were the community property of appellant's father and mother at the date of his mother's death; that his mother died intestate about 34 years prior to the filing of this suit, when appellant was a small boy, leaving surviving her Samuel G. Smith, her husband, and six children, including appellant and appellee Mrs. Thompson; that appellant owned by inheritance from his mother an undivided one-twelfth interest in the land and premises described; and that the appellee Maude E. Thompson, his sister, owned the other eleven-twelfths, the other children of his father and mother having conveyed their interest in said premises to the father after the death of the mother, and the father having died on the 27th, day of February, 1912, leaving a will in which he bequeathed said property to appellee, Maude Eva Thompson. It was further alleged that the will of Samuel G. Smith had

been duly probated and that the land and premises in question were subject to partition.

The appellees answered, denying that the appellant had any interest whatever in the property in question, setting out that the interest which he had in the premises, by reason of the facts set forth in his petition, was acquired by the appellee, Maude Eva Thompson from the appellant by virtue of a certain quitclaim deed, which the appellant for a good and valuable consideration executed and caused to be delivered to the said Maude Eva Thompson on or about May 21, 1912, which deed was filed for record May 22, 1912, and duly recorded. The appellees also set up that they had, since the execution and delivery of said deed, improved said property and had incumbered the same by giving a good and valid lien thereon to innocent purchasers, who had relied upon the execution, acknowledgment, delivery, and record of said deed. Thereupon the appellant filed his first supplemental petition, in which he denied the signing of said quitclaim deed, and said that, if he signed the same, "his signature thereto was procured by fraud and fraudulent statements made to him by the appellees and their agent, William McKee; that the said McKee, acting for and in behalf of the appellees, called upon appellant where he was at work late one afternoon and requested permission of appellant's employer to see appellant for a short time, which request was granted with the understanding that appellant be not detained for more than two or three minutes; that the said McKee thereupon took from his pocket some kind of an instrument in writing and presented same to appellant for his signature, and at the same time explained to appellant that said instrument in writing pertained to appellant's father's estate of which he (William McKee) was administrator, and that said estate was ready to be closed, but before he would be able to do so it would be necessary for him to have appellant's signature to said deed or instrument in writing; that appellant did not know that said instrument was a quitclaim deed, as is now claimed by appellees, and, had he known said instrument was intended by appellees to be a quitclaim deed to his interest in said estate, he would not have signed same. Appellant further alleged that he had known the said William McKee for a great number of years and had implicit confidence in him and fully believed and relied upon his statements; that he knew the said McKee was administrator of said estate, and that it was about time for the administration of the estate to be closed, and did not know but what it was necessary for appellant to sign some kind of an instrument along with other children in closing up said administration; that he did not know that the said McKee was acting as agent for the appellees; that he did not know that said McKee and appellees were seeking to interfere with his deceased mother's interest in the property involved in this suit or the ones claiming it under her; that he did not have time to read over the instrument in writing presented for his signature and wholly relied upon the statements of the said McKee that the same only pertained to his father's interest in said estate and did not affect his deceased mother's interest therein, nor those claiming under her. Appellant further averred that he did not intend to convey the interest in said estate coming to him from his deceased mother's interest therein, and desired to keep the same as it was intended by his deceased mother and father that he should do; that if said instrument in writing or quitclaim deed contained recitals conveying to said appellee, Maude Eva Thompson, appellant's interest in said estate coming to him through his deceased mother's interest therein and that he signed same with such recitals in it, then his act in so doing was by accident and mistake on his part and without knowledge on his part that such recitals existed therein; that no intention on his part existed at said time to convey or dispose of his interest in said estate coming to him through his deceased mother's interest therein. There is also an allegation that no consideration passed between appellant and appellees for the execution of said instrument or quitclaim deed.

The trial was before the court without a jury. There are no conclusions of law and fact, and no request was made therefor. The court, however, entered judgment, which contained the following recital:

"And it appearing to the court from the evidence that the plaintiff, Benjamin L. Smith, has no interest in the premises described in his petition; that by the deed from the plaintiff, Benjamin L. Smith, to the defendant Maude Eva Thompson, of date May 21, 1912, which said deed was filed for record May 22, 1912, and which is of record in volume 548, p. 162, of the record of deed of Dallas county, Tex., the plaintiff, Benjamin L. Smith, conveyed to the defendant Maude Eva Thompson all of his right, title, and interest in and to said premises; and it further appearing that the plaintiff is not entitled to have said deed set aside and canceled—it is by the court ordered, adjudged, and decreed that the plaintiff take nothing by his said suit, and that the defendants, Maude Eva Thompson and her husband, T. M. Thompson, go hence without day."

[1] It is assigned that the judgment of the court denying to the appellant a recovery of the title to a one-twelfth undivided interest in the land in controversy and a decree for partition is, not only contrary to the law and evidence, but that said judgment is wholly without evidence to support it. We have carefully read and re-read all the evidence as it appears in the statement of facts, and, while it is conflicting in material particulars, we regard it sufficient to support the judgment of the court. Whether appellant knew and understood that the instrument presented to him by William McKee, administrator of the estate of Samuel G. Smith, deceased, and

which was signed and duly acknowledged by him was a quitclaim deed to such interest as he had in the land and premises in controversy as an heir of his deceased mother, was a disputed issue of fact, and, that issue having been resolved against him by the trial court, upon evidence authorizing such action, the judgment on appeal, under the well-established rule of practice in this state, should not be disturbed. The case, as stated above, was tried by the court without the intervention of a jury, and, since no findings of fact were requested or filed, this court must assume that all the issues of fact arising under the pleadings and evidence were determined in favor of the party in whose favor the judgment was rendered. The property in controversy was the community property of Samuel G. Smith and Mary Smith, father and mother of the appellant. Mrs. Mary Smith died in 1879, or 1880 intestate, and there has been no administration of her estate. After the death of Mrs. Smith, Samuel G. Smith resided on the property until his death, which occurred in 1912. He left a will, which was duly probated, by which he devised to appellee Mrs. Maude Eva Thompson the premises involved in this suit, which had been for many years the homestead of the family. Mrs. Thompson lived with her father in this home until his death, and the appellant lived there as one of the family until he was about 27 years old. He was 43 at the time of the trial of this case. He inherited from his mother a one-twelfth interest in the property. He made a quitclaim deed to appellee Mrs. Thompson for said interest on the 21st day of May, 1912, which was delivered to appellees and filed for record May 22, 1912. In this connection appellant testified:

"At the time I executed the quitclaim deed inquired about, Mr. McKee, administrator of my father's estate, called on me at Schoellkopf Saddlery Company, where I was at work, and, after gaining permission to see me but for two or three minutes, approached and shook hands with me, and he says, 'Ben, I am ready to settle your father's estate, and all that remains now to be done is for you to sign the quitclaim deed and I will settle it up right away,' and I says, 'This is simply a release from myself to my father's interest,' and he says, 'Yes,' and I said, 'I will sign it.' I did not have time to look it over, so I took Mr. McKee's word and believed what he said to be true and it only pertained to my father's interest in said estate, and I did not want to put them to any cost or put them off because they wanted to settle it right away, and so I took his word for it and signed it."

He further testified that it was about the 7th, or 8th, day of the following July before he found out what the deed was; that, as soon as he found out that the deed was not as represented, he went to Mr. McKee's office and requested him to straighten the matter up, and Mr. McKee said, "The quitclaim was to all of it," and that he (appellant) replied that he did not mean it that way, and that McKee then said, "Well Ben, I don't know,

but think Maude (the appellee) ought to pay you for your share, and I might have done wrong in getting you to sign it." The appellant further testified that at the time he signed the quitclaim deed he had known Mr. McKee a long time and believed what he said and relied upon the truthfulness of his statements, otherwise he never would have signed the deed; that no one ever paid him anything as a consideration for executing the deed; and that at the time he believed the instrument he signed pertained to his father's estate and was something that was necessary to be signed in order that said estate might be closed, as was explained to him by Mr. McKee. He further said that he could not say that he knew the instrument was a quitclaim deed at the time he signed it; that he did not open it up; just opened it enough to sign it; that he signed for the purpose of releasing his interest in his father's estate; that he did not tell McKee and Mr. Middleton, who took his acknowledgment to the deed, that he wanted his sister Maude to have the property; that he could read and write; that he would not have signed the deed had he known that it might be construed to convey his interest in his mother's estate. On the other hand, William McKee, who secured appellant's signature to the quitclaim deed, and who was executor or administrator of the estate of Samuel G. Smith, deceased, testified in effect that he had known the appellant since the latter was a little boy; that he (witness) was 71 years of age; that he had acted as administrator of the estate of Samuel G. Smith; that, when the will and papers of Samuel G. Smith were turned over to him he found an unsigned deed among them in which the name of the appellant appeared as grantor and the said Samuel G. Smith as grantee, and appellant's interest in the land and premises in controversy the subject of the transfer; that this unsigned deed was in the handwriting of the said Samuel G. Smith, deceased; that he took this deed to Mr. C. C. Middleton, who was a notary public, and told him he wanted to get it fixed up; that all the children, except appellant, had signed a quitclaim deed to their father for their interest in the property; that when the unsigned deed was prepared appellant was not of age, and for that reason the deed was put with the will; that he knew the circumstances in regard to it; that the name of Samuel G. Smith, where it appeared in the deed, was changed to "Maude Thompson" (the appellee), and the date of the deed was also changed to the 21st day of May, 1912; that in company with Mr. Middleton, the notary public, he went to Schoellkopf's place of business and asked permission to see appellant, and the permission was granted; that he went to where appellant was and explained to him "the nature of the deed and told him all the other children had signed a quitclaim deed to their father for the land, and that the deed he had was in his father's writing; that the

title was perfect except for his quitclaim deed; that he told appellant the will said Maude should have the property; and that appellant replied: 'Maude ought to have the property. There is no objection to signing the deed.'" This witness further said that the appellant signed the quitclaim deed cheerfully and deliberately right in the presence of Mr. Middleton; that he walked over to a table or work bench and signed the deed and came back, and it did not take more than a few minutes; that Mr. Schoellkopf informed the witness that the men worked by the day, indicating that he should not occupy much of appellant's time. Continuing, this witness said:

"Possibly a month or so Ben (appellant) came to see me. He had been to see me two or three times previous, and he was drinking some; and I says, 'I just carried this out as your father's wish, and it was your father's wish by the deed that Maude (appellee) should get the property, and every one of the children acquiesced and said they were glad to see that Maude got the property; that Maude had stayed with their father all his life and made his home for him and ought to have the property.' That appellant came to see witness after this. That he talked and rambled. He called me up by phone, and he was not himself, and I said, 'Ben, I can't talk to you.' Mr. Middleton made the erasures in the quitclaim deed after I explained the circumstances, and I never told Ben I thought I had made a mistake, and there was no conversation about that. It was put up to him as squarely as it could be."

The witness further said that neither Mr. nor Mrs. Thompson asked him to get the quitclaim deed signed by appellant; that appellant was of age after the deed was prepared and before his father's death; that witness did not consult appellees at all about getting the quitclaim deed from appellant; that he wanted to get the estate wound up as quickly as possible; that he sent the deed up to the courthouse by the appellee Thompson to be filed for record; that he paid the notary's fee for taking the acknowledgment, the fee for recording the deed, and charged the items as expenses of administration. On cross-examination, this witness repeated more than once that he fully explained the deed to appellant and that appellant understood it. Being asked why he thought a quitclaim deed was necessary from appellant to his father's interest in the estate, he said:

"To get the title perfected so the estate would go to Maude. I wanted to get the father's interest perfect; that was all I was working for."

In this connection, he further said:

"I fully explained that deed to Ben, and Ben understood it, and I was not getting a quitclaim from Ben to his father's estate, but I was getting the title perfected, so I could turn it over. I had no interest in the matter myself."

C. C. Middleton testified that he took appellant's acknowledgment to the deed. Being asked whether Mr. McKee said anything about the deed being a release to appellant's "interest in his father's interest or to his mother's interest," the witness first said, "No, I do not know whether he mentioned that or not." He further on in his testimony said, "He didn't say anything about its relating to his mother's interest in the estate," but that appellant had an opportunity to read the deed, and said "he wanted his sister to have the property." The appellant T. M. Thompson testified that he had put a house on the lot at an expense of $600; that he "never asked Mr. McKee to get the deed from Ben to this property." The appellee Mrs. Thompson testified, among other things:

"I did not ask Mr. McKee to get Ben to make any deed to this property. All I knew was the other children did execute deeds to their interest. After Ben signed this deed, he said to me, 'I think you deserve the property; you are the girl that stayed at home, and I see no reason why you shouldn't have it.' I think that Ben all the time intended for me to have the property until something came up. I don't know what it was."

Having been asked if she wanted to keep Ben's interest in his mother's estate without paying him for it, she answered, "I would not take anything except what's right."

[2] There is no allegation that the quitclaim in question was executed by mutual mistake, and under the evidence in the case the trial court was justified in concluding, as it did, that the appellant intentionally, with full knowledge of the nature, character, and consequences of his act, and without any mistake of facts, executed and delivered it, intending that the interest he inherited from his mother in the property therein described should pass to his sister, Mrs. Thompson. It is only when the evidence is so lacking in probative force that it falls short of being any evidence that the issue sought to be established thereby may be said to be one of law and not one of fact. This rule is so well established that we need not cite authorities in support of it. Clearly this court would not be warranted in saying as a matter of law that William McKee misrepresented to appellant the character of the quitclaim deed he signed, the interest it transferred to appellee, and that appellant, at the time he executed it, did not know its real nature and the consequences of its execution. These were, under the evidence, issues of fact, and the trial court's determination of them are conclusive upon this court.

[3] The contention of appellant that the deed executed by him is not supported by any consideration cannot be sustained. The deed expressed a consideration of love and affection, and, the evidence being sufficient to justify the court's conclusion that appellant understood its nature and the consequences of its execution and delivery, there is no question of the sufficiency of the consideration. The delivery of the deed to McKee, his delivery of it to appellees, who had it placed of record, was a sufficient delivery to and acceptance of it by appellees to complete the transaction and pass appellant's interest in the land to them.

The judgment is affirmed.